IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 6214 |
| | ) | |
| BEVERLY MANUFACTURING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Andrew Corporation ("Andrew"), filed this suit on September 23, 2004 alleging that defendant Beverly Manufacturing Company ("Beverly"), infringed two of Andrew's United States patents No. 5,850,056 ("the '056 patent"), and No. 6,324,543 ("the '543 patent"). (Dkt. No. 1). Beverly filed an answer, affirmative defenses and counterclaim on November 8, 2004. (Dkt. No. 12). On January 7, 2005, Beverly filed a motion for partial judgment on the pleadings as to Andrew's infringement allegations under the '543 patent pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, ("Rules"). (Dkt. No. 21). On February 3, 2005, this court granted Beverly's motion to stay discovery on the '543 patent pending this court's determination of Beverly's motion for judgment on the pleadings involving the '543 patent. (Dkt. No. 27). The court's February 3, 2005 order also required Andrew to identify the claims in the '543 patent that it alleges Beverly's device infringes and required the parties to submit jointly a paginated copy of the '543 patent's prosecution history. For the reasons set forth below, this court denies Beverly's motion for judgment on the pleadings, vacates the stay of discovery and requests the parties to proceed with the agreed amended litigation schedule set on May 26, 2005. (Dkt. No. 44).

## BACKGROUND

The '543 patent, dated March 12, 2002, is entitled "Stackable Transmission Line Hanger." (Dkt. No. 31 at pg. 1). The '543 patent is for a device that allows the connection of transmission cables to an antenna system such as a cellular or communication tower. (*Id.* at 15). The patented device also contains a feature that allows it to connect with other copies of the device so that several transmission cables can be "stacked" or held by an interconnected series of the patented devices to the transmission tower.

Andrew's complaint alleges that Beverly's product Part No. 62875 ("Part No. 62875"), infringes Andrew's '543 patent. (Dkt. No. 1 at ¶ 13). Andrew asserts that Beverly's device infringes Claims 1, 2, 3, 4, 7, 8, 11, 12, 13, 15, 16, 17, 19, 20, 31, 32, 33, and 38 of the '543 patent. (Dkt. No. 30). Andrew seeks a judgment of infringement, equitable and monetary relief, costs and attorneys' fees. (Dkt. No. 1 at pg. 4). Exhibit B to Andrew's complaint is a letter dated August 12, 2004 sent by one of its attorneys to Beverly asserting that Beverly's Part No. 62875 infringes Andrew's '543 patent. The August 12, 2004 letter also demanded that Beverly stop producing and selling Beverly's Part No. 62875 and that Beverly provide an accounting of all Part No. 62875s sold since Andrew received its '543 patent. (Dkt. No. 1 Ex. B).

Beverly filed a counterclaim seeking a declaration that its Part No. 62875 does not infringe the '543 patent and seeking attorneys' fees. (Dkt. No. 12 at pg. 8-9). Beverly argues that this court can decide this issue of noninfringement under a 12(c) motion for judgment on the pleadings. Andrew in response contends that Beverly's motion goes beyond the pleadings, and therefore the court cannot decide this issue under the present procedural posture of the case.

## ANALYSIS

Andrew's complaint invokes this court's subject matter jurisdiction pursuant to 35 U.S.C. §§ 271 and 281 and 28 U.S.C. §§ 1331 and 1338. (Dkt. No. 1 at ¶ 4). An actual controversy exists between Andrew and Beverly so as to allow for the existence of Beverly's requested relief of a judgment on the pleadings of noninfringement. *See Anoto AB v. Sekendur*, No. 03 C 4723, 2004 WL 2434220, at *1 (N.D. Ill. Oct. 28, 2004) (citing *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)).

### A. Motion for Judgment on the Pleadings verses Summary Judgment

As previously mentioned, the parties disagree whether this court can determine at this stage in this litigation whether Beverly's Part No. 62875 infringes Andrew's '543 patent. Beverly argues that this court can decide the question of infringement under a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rules"). Andrew counters that Beverly's motion and secondary information provided by Beverly in support of its motion goes beyond the pleadings, and therefore inappropriately converts the motion to one for summary judgment. Andrew further argues summary judgment is not appropriate at this stage in the litigation because the parties have not yet to engage in discovery on the '543 patent / Part No. 62875 issue. Andrew also argues that Beverly should be denied summary judgment because Beverly has failed to follow the procedural requirements for the submission of factual information in support of summary judgment under Local Civil Rule 56 (N.D. Ill.).

As to procedural rules this court is bound to follow Seventh Circuit law because as the United States Court of Appeals for the Federal Circuit has stated, the regional appellate rules

govern "procedural matters not unique to the areas that are exclusively assigned to the Federal Circuit," *National Pesto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1188 n.2 (Fed. Cir. 1996) (citing *Lummus Indus. v. D.M & E. Corp.*, 862 F.2d 267 (Fed. Cir. 1996)). This court is, of course, bound by Federal Circuit law on substantive areas of patent law exclusive to the Federal Circuit's jurisdiction, but, this court must look to the law of the Seventh Circuit for the proper method of addressing a motion for judgment on the pleadings.

Andrew has not provided, and this court has been unable to identify through its own research, any binding authority from the Seventh Circuit or persuasive authority from the Federal Circuit that holds that it is *per se* inappropriate for a court to address a counterclaim of noninfringement by the procedural means of a motion for judgment on the pleadings. Andrew's argument is not that it is improper in general to address a motion for a judgment on the pleadings, but that what Beverly is attempting to do violates the requirements for a judgment on the pleadings under Rule 12(c) by improperly requiring the conversion of the motion to one for summary judgment under Rule 56.

The court, after reviewing the arguments presented by counsel, believes that the proper procedure for the court to follow is to address Beverly's motion for judgment on the pleadings as such under Rule 12(c) and not convert Beverly's motion into one for summary judgment under Rule 56.[1]

---

[1] The court believes this because a Rule 12(c) motion is generally treated similarly to a Rule 12(b)(6) motion, *see Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A Rule 12(b)(6) motion must be treated as a Rule 56 motion if matters outside the pleadings are presented by a party unless those matters outside the pleadings are excluded from the court's consideration. *Carter v. Stanton*, 405 U.S. 669, 671 (1972); *Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003).

### 1. Standard of Review for Rule 12(c) Judgment on the Pleadings

Rule 12(c) permits for a motion for judgment on pleadings at a point after the close of the pleadings but within such time that the motion would not delay the trial. Fed. R. Civ. P. 12(c). A court reviewing a Rule 12(c) motion for judgment on the pleadings must apply the same standard as applied for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief maybe granted. *Guise v. BMW Mortgage Inc.*, 377 F.3d 795, 798 (7th Cir. 2004). The well-pleaded allegations in the complaint must be accepted as true and the ambiguities in the complaint must be construed in favor of the plaintiff. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Granting a Rule 12(c) motion is only permissible "when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Guise*, 377 F.3d at 798.

"In a motion for judgment on the pleadings, the court considers the pleadings alone, which consist of the complaint, the answer, and any written instruments attached as exhibits." *Housing Auth. Risk Retention Group, Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 599 (7th Cir. 2004) *adopting* No. 02 C 4474 (N.D. Ill. 2003). The court can also consider copies of written documents that the defendant attaches to the motion when the documents are referred to in the plaintiff's complaint, they are central to the plaintiff's claims but were not attached as exhibits, *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). The court can also take judicial notice of matters in the public record. *Anderson v. Simon*, 310 F.3d 969, 971 (7th Cir. 2002).

## 2. Material Considered by the Court on the Motion for Judgment on the Pleadings

Andrew objects to the consideration of other patents and their prosecution histories to which Beverly has referred in its motion and supporting memorandum. Andrew's view is that the court should only consider the pleadings and the '543 patent, and that other materials Beverly has requested the court to consider should be excluded.

The court's evaluation of materials is not quite as limited as Andrew asserts because the court is allowed to take judicial notice of information in the public record when considering a motion for judgment on the pleadings. *Anderson v. Simon*, 310 F.3d 969, 971 (7th Cir. 2002). A patent and a patent's prosecution history are public documents in the public record and therefore the court can also consider these documents.

The court cannot, however, consider all of the material presented by Beverly in its motion and supporting exhibits. Beverly includes a marketing flyer with pictures of Part No. 62875 and also includes a physical example of Part No. 62875. Both parties also include various pictures of the Beverly and Andrew products with their memoranda. As stated earlier in this opinion, the court will not consider this additional material with regard to a motion for judgment on the pleadings.

Rule 10(c) allows for the attachment of "a copy of any written instrument" as an exhibit to a pleading. Fed. R. Civ. P. 10(c). The judicially created corollary of Rule 10(c) is the rule allowing the defendant to attach to a motion to dismiss a copy of a written document that is referred to in the plaintiff's complaint and is central to the plaintiff's claim. *See e.g., Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). The Seventh Circuit has defined "written instruments" under Rule 10(c) to"include document such as affidavits,

letters, ... contracts, and loan documents." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 (7th Cir. 1998) (internal citations omitted).

The physical item Part No. 62875 does not fall within the definition of "written instruments" under Rule 10(c) or Rule 10(c)'s judicially recognized corollary rule. This court agrees with Beverly that Beverly's Part No. 62875 is a central item in the dispute much the same way that a contract would be the central item in a breach of contract dispute. Although it seems like a technicality, the plain language of Rule 10(c) and the Seventh Circuit interpretation limits the court to considering only "written documents." Therefore, the court must exclude Beverly's Part No. 62875 from its consideration of Beverly's motion for judgment on the pleadings.

B. Claim Construction

To assist the parties, the court has examined certain of the claim language of the '543 patent. Claim construction of the '543 patent can proceed and, indeed, should proceed without reference to the alleged infringing device because claim construction, "is a matter of law for the court to determine." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (1995) (en banc) *aff'd* 517 U.S. 370 (1996). The first step in construing a claim is to look to the intrinsic evidence concerning the patent, which includes the patent specification as well as the patent's prosecution history. It is improper for a court to rely on extrinsic evidence when evaluation of the intrinsic evidence resolves the dispute regarding the construction of a claim. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). "Where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper." *Id.* "The words of the claims themselves define the scope of the invention, and are given their ordinary and customary meaning." *Id.* (citations omitted). Generally speaking, there

7

is a heavy presumption that a claim term carries its ordinary and customary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). "[P]rior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence." *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005) (quoting *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003)).

The heavy presumption of plain meaning is rebutted, and a court may limit the ordinary meaning of a claim where: (1) the patentee acting as his own lexicographer clearly established a definition of the term different from its customary meaning in either the patent specification or prosecution history, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), (2) "the term 'chosen by the patentee so deprive[s] the claim of clarity' as to require resort to other intrinsic evidence for evidence for a definite meaning, *CCS Fitness*, 288 F.3d at 1367, (3) the doctrine of prosecution disclaimer applies, and (4) the patentee phrases the claim in means-plus-function format. *See* 35 U.S.C. § 112 ¶ 6; *Allen Eng'g Corp.*, 299 F.3d at 1347-48.

"Where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). *See also Spectrum Int'l, Inc. v. Sterlite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998) ("[E]xplicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art may serve to narrow the scope of a claim."); *Southwall Tech. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."); *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)

("[T]he prosecution history ... limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance."). The doctrine of prosecution disclaimer is not applied where the "alleged disavowal of claim scope is ambiguous." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Claims may be written in the means-plus-function form according to 35 U.S.C. § 112, ¶ 6, which reads as follows:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. "The use of the word 'means' 'triggers a presumption that the inventor used this term advisedly to invoke the statutory mandate for means-plus-function clauses." *Allen Eng'g Corp.*, 299 F.3d at 1347 (citations omitted). This presumption may be overcome when the claim language either recites no function corresponding to the means or describes sufficient structure or material for performing the structure. *Id.*

### 1. Terms to be Constructed: "Locking Barb" & "Detent"

Beverly asserts that independent claims 1, 5, 31, 32, 33, 34, 35, 36, 37, and 38 of Andrew's '543 patent requires a "locking barb" and Beverly's product does not include a locking barb.[2] The question presented by the parties' arguments is whether a "locking barb" and a "detent" are interchangeable terms in relationship to the '543 patent. Beverly argues that its Part No. 62875 does not infringe Andrew's '543 patent because its part contains a "detent" while

---

[2] Beverly also argued over the term "spring fingers" as it related to independent claim 22. However, Andrew stated in its brief that it is not alleging infringement of claim 22 so that court need not construe the term "spring fingers."

9

Andrew's patent requires a locking barb. Beverly does not provide a definition of a "detent" or "locking barb." Instead, Beverly argues that two prior art patents cited in the '543 patent, United States Patents No. 5,393,021 ('021), and 4,763,132 ('132), demonstrate that a locking barb is different than a detent.

Andrew argues that the term "locking barb" is used in the '543 patent in its ordinary and customary meaning. Although not defining "locking barb," Andrew provides a definition for "barb" from *New Webster's Dictionary and Thesaurus of the English Language*. According to Andrew's dictionary definition, a barb is "the part of an arrow, fishhook, bee's sting, etc. that points backwards and prevents or hinders removal." (Dkt. No. 33 at pg. 6 citing *New Webster's Dictionary and Thesaurus of the English Language* 77 (2d ed. 1992)). Andrew provides the *McGraw-Hill Dictionary of Science and Engineering* definition for a "detent" as "a catch or lever in a mechanism which initiates or locks movement of a part, especially in escapement mechanisms," and provides the *New Webster's* definition of a "detent" as "a catch for controlling the motion of machinery, especially, one used in horology," for the making of time pieces. (*Id.* at pg. 7). Andrew's argument is that these dictionary definitions demonstrate that a barb and a detent are the same thing because they are both used to attach an item against another surface.

The court agrees with Beverly's argument to the extent that the court agrees that the prior art patent '021 is relevant to the interpretation of the '543 patent. The '021 patent relates to a device used to connect cables to transmission towers. One of the short comings of the '021 patent, according to the background section in the '021 patent, is that the patented device does not make full contact with the transmission tower in certain situations. (Dkt. No 21, Ex 4 at col. 2, l. 20-35). The inability to make full contact is caused by non-uniformities such as

imperfections, bubbles or variations in the galvanizing finish of the attachment opening on the tower wall.

The '543 patent specifically addresses the same situation but states that "the hanger **10** is designed such that each locking barb **22** contacts the inner surface **60** of the supporting structure **5** at the barb contact point **23**." (Dkt. No. 31 at Paske 17). This is a key difference between the '543 and '021 patents. The '021 patent recognizes the inefficiency in the process of the attachment of the '021 patented device to the larger support tower due to irregularities in the tower wall's finishing. The '543 patent corrects for this problem by allowing for complete attachment to the tower wall even when the tower wall structure has irregularities.

The court cannot, however, accept the remainder of Beverly's argument. The '021 patent uses the word "detent" for the part of the device that connects the device to the tower. The '543 patent uses the phrase "locking barb." Beverly argues that since the '021 patent contains the word "detent" and '543 patent has the phrase "locking barb," this means that a "locking barb" and a "detent" are two different things.

The court cannot agree with Beverly's conclusion on that point at this time. The locking barb and the detent are the parts of the patented devices in the two respective patents which enhances the connection of the patented device to the tower. It is true that the '021 patent claims a lesser level of connection to the tower than the '543 patent. However, this does not mean that the respective connectors in each patent, the locking barb and the detent, are different items. The '543 mentions that it is able to correct the irregularity in the connection, not through the use of the locking barb, but instead through the design of the patented product. "The hanger **10** is *designed* such that each locking barb **22** contacts the inner surface **60** of the supporting structure

5 at the barb contact point **23**." (Dkt. No. 31 at Paske 17) (emphasis added). The difference in result from the '021 patent and the '543 patent does not appear to be based on the presence of the detent in the '021 patent and locking barb in the '543 patent. The difference appears to be due to the adjustment of the design of the '543 patent. The court, however, cannot make a definitive determination on this point at this time.

C. Infringement

Although the court has been able to consider the parties arguments as they relate to the '543 and '021 patents, the court cannot proceed with an infringement analysis for several reasons. The court cannot consider Beverly's Part No. No. 62875 because to do so would expand beyond the scope of a Rule 12(c) motion for judgment on the pleadings.

Even if the court could consider Beverly's Part No. 62875, the court does not have sufficient information to determine whether Beverly's part infringes Andrew's '543 patent. The court has attempted to construe key patent term in dispute within the context presented by the parties at this time. The court recognizes the difference between the '021 patent and the '543 patent as they relate to the connection of the patented products to the tower and the difficulties in that connection due irregularities that are sometimes present in the tower structure wall.

D. Sanctions and Attorneys Fees

Both parties also seek attorneys' fees and sanctions from the other party in relation to this motion. In light of the fact that this is an outgoing litigation and neither party has obtain prevailing party status, this court will not consider requests for attorneys' fees and sanctions at this time.

## CONCLUSION

For the reasons set forth above, Beverly's motion for judgment on the pleadings as to its counterclaim of noninfringement on Andrew's '543 patent is denied. The stay of February 3, 2005 of discovery related to the '543 patent is lifted. The parties are to proceed under the agreed amended litigation schedule of May 26, 2005. (Dkt. No. 44).

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: June 10, 2005

13