IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 6214 |
| | ) | |
| BEVERLY MANUFACTURING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On August 31, 2005, plaintiff Andrew Corporation ("Andrew"), filed its first amended complaint alleging that defendant Beverly Manufacturing Company, ("Beverly"), infringed three of Andrew's patents: United States Patents Nos. 5,850,056 ("the '056 patent"); 6,354,543 ("the '543 patent"); and 6,899,305 ("the '305 patent"). (Dkt. No. 74). These patents relate to cable hangers and other technology used in telecommunication towers. Andrew's first amended complaint also alleges that Beverly willfully infringed Andrew's '056 and '543 patents after Beverly received written notice from Andrew of the alleged infringement. (Dkt. No. 74 at ¶¶ 10, 14). Beverly wishes to use three opinion letters written by its counsel from the law firm of Barnes & Thornburg in Beverly's defense to Andrew's allegations of willful infringement.

On November 8, 2005, Andrew filed the pending "Motion to Disqualify Counsel and Exclude all Opinion Letters Issued by Counsel," (Dkt. No. 93), seeking to prevent Beverly from presenting evidence regarding the three Barnes & Thornburg opinion letters and to bar Barnes & Thornburg attorneys from testifying or otherwise participating in this case. Both Andrew and Beverly are current clients of Barnes & Thornburg. Barnes & Thornburg has not filed an

appearance in this case on behalf of either party. In light of the allegations set forth in the pending motion, this court on December 23, 2005 ordered the parties to furnish Barnes & Thornburg a copy of their filings on the pending motion. (Dkt. No. 125). The court then provided Barnes & Thornburg with an opportunity to file a response. (*Id.*) Barnes & Thornburg's response was filed on January 23, 2006 in the form of a letter dated January 20, 2006 from its General Counsel Kenneth H. Inskeep. (Dkt. No. 134). The parties filed their respective final replies on February 1, 2006. (Dkt. Nos. 138-39). For the reasons set forth below, this court grants Andrew's motion.

## FACTUAL BACKGROUND

Barnes & Thornburg's three opinion letters were issued to Beverly on July 8, 2003, July 15, 2003 and August 28, 2003. Each of these opinion letters state positions that are adverse to Andrew. The July 8, 2003 letter, signed by Barnes & Thornburg attorneys Timothy J. Engling[1] ("Engling"), and Dennis M. McWilliams ("McWilliams"), opined that Beverly's newly "modified stackable hanger does not fall within the claims of [Andrew's] '543 patent." (Dkt. No. 128 at Ex. A, pg. 1). The July 15, 2003 letter, signed by Barnes and Thornburg attorneys Engling and Mark J. Nahnsen[2] ("Nahnsen"), provided a similar opinion that Beverly's newly designed "grounding kit does not fall within the claims of [Andrew's] '056 patent." (*Id.* at Ex. B, pg. 1). The July 15, 2003 letter was supplemented by the third opinion letter dated August 28, 2003 which was also signed by Engling and Nahnsen. The August 28, 2003 letter opines that

---

[1] Admitted to practice before the United States District Court for the Northern District of Illinois on December 6, 1995.

[2] Admitted to practice before the United States District Court for the Northern District of Illinois on June 21, 2000.

2

Beverly's "new embodiment of the grounding kit does not literally infringe the '056 patent, and there would be no infringement under the Doctrine of Equivalents ...." (*Id.* at Ex. B., stamped number B509).

Beverly was previously represented by McWilliams and Engling when they were members of the law firm of Lee Mann, Smith, McWilliams, Sweeney & Ohlson ("Lee Mann"). (Dkt. No. 134 at pg. 2). In 2000, attorneys from Lee Mann, including Engling, were counsel for Beverly in a dispute that Beverly had with Andrew. In that dispute, Andrew threatened to sue Beverly for unfair competition and misappropriation of trade secrets over Beverly's "snap-in hangers," (Dkt. No. 130 at Ex. 2, pg. 3), but before a lawsuit was filed, the parties reached a settlement in which Beverly agreed to adjust the design of the "snap-in hanger." (*Id.* at Ex. 5). According to the July 8, 2003 opinion letter, Beverly's post-2000 settlement "modified snap-in hanger" is a "variation on a hanger described in Andrew's expired '132 patent." (Dkt. No. 128 at Ex. A, pg. 1). Beverly renamed the modified "snap-in hanger" to be called "the modified stackable hanger." The modified stackable hanger is analyzed in the July 8, 2003 opinion letter and Andrew now asserts in this litigation that Beverly's modified stackable hanger infringes Andrew's '543 patent.

While still at the Lee Mann firm in 2002, McWilliams and Engling began working for Beverly on their opinions with regard to Andrew's patents at issue in this case and opened two legal files in the Lee Mann's filing system regarding that work. (Dkt. No. 134 at pg. 2). According to Barnes & Thornburg's General Counsel, these Lee Mann files, however, did not list Andrew as the adverse party. (*Id.* at pg. 3). The Lee Mann law firm merged into Barnes & Thornburg in January 2003 and McWilliams and Engling joined Barnes & Thornburg as partners.

(*Id.*)

At the time of that merger in January 2003, Andrew was a client of Barnes & Thornburg. Barnes & Thornburg lawyers Daniel P. Albers[3] ("Albers"), and Thomas J. Donovan[4] ("Donovan"), among others, were representing Andrew in the patent infringement case *Andrew Corp v. Kathrein, Inc.*, No. 02 C 3522 (N.D. Ill.) (Guzman, J.). Barnes & Thornburg's conflicts department analyzed Lee Mann's client information in conjunction with the merger to determine whether Beverly could be a Barnes & Thornburg client. Barnes & Thornburg recognized no conflict between Andrew and Beverly despite the fact that the work McWilliams and Engling performed for Beverly had analyzed Andrew's patents adversely to Andrew. (Dkt. No. 134 at pg 3). Failing to identify the conflict during the merger, Barnes & Thornburg approved Beverly as one its new clients without informing Andrew or Beverly of any conflict or requesting consent from either. (*Id.*) Barnes & Thornburg in July and August 2003 provided Beverly the three opinion letters that were adverse to Andrew.

Barnes & Thornburg continued not to recognize the conflict during 2003 and the first half of 2004 despite the fact that, as of June 30, 2003, McWilliams, Engling, Nahnsen, Albers and Donovan were all physically located in same Barnes & Thornburg office in Chicago performing patent related services. (Albers and Donovan were representing Andrew and McWilliams, Engling and Nahnsen were representing Beverly.) In August 2004, both Andrew and Beverly contacted Barnes & Thornburg with each seeking representation in the dispute that has led to this

---

[3] Admitted to practice before the United States District Court for the Northern District of Illinois on March 21, 1985.

[4] Admitted to practice before the United States District Court for the Northern District of Illinois on July 27, 1987.

litigation between Andrew and Beverly.[5] (*Id.* at pg. 4). Barnes & Thornburg finally recognized that it concurrently represented both Andrew and Beverly and declined both companies' request for representation against one another. (*Id.*) Consequently, Andrew and Beverly are represented by other law firms in this case. Despite Barnes & Thornburg's August 2004 recognition that it could not represent either Beverly and Andrew against one another, and that Barnes & Thornburg's 2003 opinion letters were adverse to Andrew, lawyers at Barnes & Thornburg still represent both Andrew and Beverly in other matters through the present. (Dkt. No. 138 at pg. 3).

Barnes & Thornburg General Counsel asserts that, despite the current representation of both Andrew and Beverly, "the Barnes & Thornburg lawyers who represented Andrew have never discussed any Beverly matter with the Barnes & Thornburg lawyers who represented Beverly and visa versa." (Dkt. No. 134 at pg. 5). Although further discovery may be necessary, the record in this case appears to show that there were Barnes & Thornburg lawyers who were personally representing both Andrew and Beverly simultaneously in July and August 2003, the time period when the opinion letters adverse to Andrew were provided to Beverly.

Andrew's supplemental reply filed February 1, 2006 includes a copy of Beverly's patent application dated August 13, 2003 entitled a "One-Piece Resilient Stackable Hanger" submitted to the U.S. Patent and Trademark Office ("PTO"), by Barnes & Thornburg attorneys. (Dkt. No. 138 at Ex. 1). Beverly's patent application for the One-Piece Resilient Stackable Hanger mentions both Andrew's '132 and '543 patents and identifies Andrew's '543 patent as the closest prior art to Beverly's invention. (*Id.* at Ex. 1, pg. B6189). In Beverly's appeal, prosecuted by Barnes & Thornburg attorneys, from an adverse decision by the patent office examiner, Beverly

---

[5] The initial complaint in this case was filed on September 23, 2004. (Dkt. No. 1).

attempted to distinguish its invention from Andrew's '543 patent. (*Id.* at Ex. 1, pgs. B6291-95).

Beverly's August 13, 2003 "One-Piece Resilient Stackable Hanger" patent application includes a power of attorney declaration appointing 34 Barnes & Thornburg attorneys to prosecute the patent application on Beverly's behalf. Although Engling appears to be the primary Barnes & Thornburg attorney involved in Beverly's patent application, Albers and Donovan, who were counsel of record for Andrew in *Andrew Corp. v. Kathrein, Inc.*, No. 02 C 3522 (N.D. Ill.) (Guzman, J.), were also included in the power of attorney listing for Beverly's August 13, 2003 patent application. (Dkt. No. 138 at Ex. 1, pg. B6185). The *Andrew Corp. v. Kathrein, Inc.* case remained pending case in August 2003. Albers also represented Andrew in *Andrew Corp. v. EMS Tech, Inc.*, No. 04 C 3594 (N.D. Ill.) (Gettleman, J.), a case that was filed in 2004 and remained pending during the first part of 2005 when Beverly's patent application, seeking relief adverse to Andrew, was being prosecuted through the PTO and the Board of Patent Appeals. (Dkt. No. 138 at Ex. 1, pgs. B6180 - B6354). There is, however, no evidence in the record at this time that the *Kathrein* and *EMS Tech* cases, which are both patent infringement cases filed by Barnes & Thornburg attorneys on Andrew's behalf, involved Andrew's '132 patents or '543 patent or that Barnes & Thornburg attorneys Albers and Donovan performed any work on Beverly's patent application for the One-Piece Resilient Stackable Hanger despite the power of attorney designation. Moreover, no evidence has been presented, at this time, from which it can be inferred that any Barnes & Thornburg attorney used any of Andrew's privileged or confidential information on Beverly's behalf or visa versa.

Andrew contends that Barnes & Thornburg breached its fiduciary duties to Andrew by taking positions adverse to Andrew in the July and August 2003 opinion letters provided to

6

Beverly. Therefore, Andrew asserts that Barnes & Thornburg must be disqualified from any participation in this case, that the three July and August 2003 opinion letters must be withdrawn, and that Beverly must be barred from using the opinions or presenting any testimony regarding those opinion letters in this case.

Beverly counters that Barnes & Thornburg cannot be disqualified because it never filed an appearance in this case. Beverly also argues that it is blameless in this situation, and therefore it should not be penalized for any mistakes made by Barnes & Thornburg. Additionally, Beverly argues that Andrew has been aware of the concurrent representation for over a year and that this motion is merely a litigation tactic. Barnes & Thornburg stated in its General Counsel's January 20, 2006 letter to this court that it would only provide factual information and would not comment on the parties' legal arguments on the pending motion because two of its current clients are seeking differing outcomes on the pending motion. (Dkt. No. 134, at pg. 2).

## ANALYSIS

Local Rules 83.50.1 through 83.58.9 are the Rules of Professional Conduct to which all counsel appearing before this district court are to adhere. N.D. Ill. L.R. 83.50.1. This district's Rules of Professional Conduct are patterned after the ABA's Model Rules. *See United States v. Hanhardt*, 156 F. Supp. 2d 988, 999 (N.D. Ill. 2001) (citing N.D. Ill. L.R. 83.50.1)). Local Rule 83.51.7(a) states that "a lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after disclosure." N.D. Ill. L.R. 83.51.7. Local Rule 83.51.10(a) states that "no lawyer associated with a firm shall represent a client when the lawyer knows or reasonably should know that

7

another lawyer associated with that firm would be prohibited from doing so by L.R. 83.51.7."
N.D. Ill. 83.51.10(a).

"Generally, if an attorney or law firm is involved in a concurrent representation conflict and cannot obtain a waiver of the conflict by both clients, there is a stringent standard of review. The court must consider 'the duty of undivided loyalty which an attorney owes to each of his clients.'" *Installation Software Tech., Inc. v. Wise Solutions, Inc.*, No. 03 C 4502, 2004 WL 524829, at *3 (N.D. Ill. Mar. 5, 2004) (quoting *Whiting Corp. v. White Mach. Corp.*, 567 F.2d 713, 716 (7th Cir. 1977); *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976)).[6] "[L]oyalty to a client prohibits undertaking representation directly adverse to that client without the client's consent. [Local Rule 83.51.7(a)] expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." N.D. Ill. L.R. 83.51.7 Comm. Cmts.

A. The Conflict

Barnes & Thornburg's attorneys took positions directly adverse to its client Andrew in

---

[6] The Seventh Circuit applies the three part "substantial relationship" test when determining whether an attorney's current representation of one client conflicts with that attorneys's prior representation of a second client requiring disqualification pursuant to Local Rule 83.51.9. *See City of Waukegan v. Martinovich*, No. 03 C 3984, 2005 WL 3465567, at *3 (N.D. Ill. Dec. 16, 2005) (citing *Cromley v. Bd. of Educ. of Lockport Twp. High Sch. Dist. 205*, 17 F.3d 1059, 1064 (7th Cir. 1994)). The present case, however, involves the simultaneous representation of two clients with adverse interests in violation of Local Rule 83.51.7. The "substantial relationship" test is not applicable because Barnes & Thornburg's undivided duty of loyalty to Andrew prevented it from taking positions adverse to Andrew without first obtaining an informed waiver from both Andrew and Beverly. *See Mustang Enters, Inc. v. Plug-In Storage Sys., Inc.*, 874 F. Supp. 881, 886 (N.D. Ill. 1995) ("The prohibition against ... simultaneous representations even in unrelated matters is based on the fundamental concept that lawyers owe undivided loyalty to their clients.") (Shadur, J.) (emphasis omitted); *Ransburg Corp. v. Champion Spark Plug Co.*, 648 F. Supp. 1040, 1044 (N.D. Ill 1986) (Holderman, J.).

the July and August 2003 opinion letters on behalf of its other client Beverly, without obtaining informed consent[7] from both Andrew and Beverly, in violation of Local Rules 83.51.7 and 83.51.10. These opinion letters advised Beverly that its products did not infringe Andrew's patents, attacked Andrew's patents, provided potential litigation arguments[8] and provided a factual basis for a potential defense against future claims by Andrew of willful infringement. Barnes & Thornburg possessed sufficient information to have determined that its work for Beverly was adverse to its existing client Andrew, that it would affect its relationship with Andrew and that the Barnes & Thornburg firm as a whole was disqualified under the imputed conflict rule of Local Rule 83.51.10. The initial failure to record in the Lee Mann files that Andrew was an adverse party, and that the project's purpose was evaluating Andrew's patents, does not excuse Barnes & Thornburg's conduct. Nor does Barnes & Thornburg's arguments that no Barnes & Thornburg lawyer worked on both Andrew and Beverly cases, that there was no use of confidential information, and that the Barnes & Thornburg lawyers did not discuss their concurrent representation of Andrew and Beverly relieve Barnes & Thornburg of its ethical

---

[7] The Committee Comments to Local Rule 83.51.7 suggest that "there may be circumstances where it is impossible to make the disclosure necessary to obtain consent." N.D. Ill. L.R. 83.51.7 Comm. Cmts. The adverse nature of Andrew and Beverly's interests may have made it impossible for Barnes & Thornburg to have obtained informed consent from both Andrew and Beverly. That question, however, is rendered moot by the fact that Barnes & Thornburg did not seek to obtain consent from its clients.

[8] One of the arguments raised in the July 8, 2003 opinion letter has already been used by Beverly against Andrew in this litigation. The July 8, 2003 letter argued that Beverly's modified stackable hanger did not infringe Andrew's '543 patent because Beverly's product does not contain a locking barb or spring fingers. (Dkt. No. 128 at Ex. A, pg. 7). The argument over the locking barb and spring fingers was raised by Beverly in its January 7, 2005 motion for judgment on the pleadings in this litigation. (Dkt. No. 21). The court does not know whether Beverly's current attorneys, who are from a different law firm than Barnes & Thornburg, relied upon the July 8, 2003 letter in developing the motion for judgment on the pleadings.

9

responsibilities to comply with Local Rules 83.51.7 and 83.51.10.[9]

B. The Remedy

Having determined that Barnes & Thornburg issued the July and August 2003 opinion letters while laboring under an actual conflict in violation of Local Rules 83.51.7 and 83.51.10 of this district's Rules of Professional Conduct, this court must now undertake the unpleasant task of determining what remedy, if any, should be provided. To begin, this court must reject Beverly's argument that it is an innocent party and cannot be held liable for Barnes & Thornburg's errors. It has long been the law that "[l]awyers' errors in civil proceedings are imputed to their clients." *Ajose v. Gonzales*, 408 F.3d 393, 395 (7th Cir. 2005) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 396-97 (1993); *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639 (1976); *Link v. Wabash R.R.*, 370 U.S. 626, 633-34 (1962); *Societe Internationale v. Rogers*, 359 U.S. 197, 212 (1958)); *see, e.g., Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004) (failure to object to a proceeding in which the court sits as a finder of fact waives a valid jury demand when it is clear that the court intended to make factual determinations); *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 545 (N.D. Ill. 2004) (citing *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 663 (7th Cir. 1986) (failure to assert personal jurisdiction defense in response pleading can constitute waiver of objection under Rule 12(h)(1));

---

[9] Barnes & Thornburg's argument that no lawyer worked on both Beverly and Andrew cases is, of course, questionable in light of Albers' and Donovan's appearances on both Beverly's patent application and on behalf of Andrew in other litigation in this district. However, the imputed disqualification rule of 83.51.10 extends the disqualification to the entire firm of Barnes & Thornburg and therefore the argument that no lawyer performed legal work for both clients does not cure the conflict.

*cf. United States v. Guy*, 140 F.3d 735 (7th Cir. 1998) (dismissing a criminal appeal when the lawyer erroneously miscalculated the days available for filing the notice of appeal).

This court agrees with the Seventh Circuit's view that "it is ordinarily preferable to sanction the lawyer for the lawyer's mistake than ... to precipitate a second suit - a suit against the lawyer for malpractice." *Bolt v. Loy*, 227 F.3d 854, 857 (7th Cir. 2000) (internal citations omitted). Additionally, this court also recognizes that attorney disqualification is a "drastic remedy which courts should hesitate to impose except when absolutely necessary [because] it may create ... delay and deprive parties of their chosen legal advisor." *City of Waukegan v. Martinovich*, No. 03 C 3984, 2005 WL 3465567, at *3 (N.D. Ill. Dec. 16, 2005) (quoting *Owen v. Wagerin*, 985 F.2d 312, 317 (7th Cir. 1993); *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997)). Unfortunately, the circumstances of Barnes & Thornburg's unwaived conflict created by its concurrent representation of two clients with adverse interests eliminates any opportunity to fashion a less restrictive remedy. If Beverly is allowed to use the opinion letters at issue in this case, Andrew will suffer because of Barnes & Thornburg's breach of its ethical duty to Andrew. The public will also suffer if the opinion letters are used in these proceedings because the opinion letters are the product of attorneys laboring under an unwaived conflict of interest. However, if Beverly is not allowed to use the opinion letters in this case, Beverly will suffer because of Barnes & Thornburg's breach of its ethical duty to Beverly resulting from the conflict created by Barnes & Thornburg's representation of Andrew to which Beverly never consented.

Beverly's second argument is that the remedy of disqualification is not available in this case because attorneys from Barnes & Thornburg have not filed appearances in this case and in

turn there is no one to disqualify. "It is well established that courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal and that the inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1011 (N.D. Ill. 2003) (citing *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 303 (N.D. Ill. 1997)). This court's obligation includes "the duty to safeguard the sacrosanct privacy of the attorney-client privilege." *DeLeo v. Swirsky*, No. 00 C 6917, 2003 WL 291914, at *1 (N.D. Ill. Feb. 10, 2003) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). "Clients and the public will not repose confidence 'in lawyers who they distrust and will not trust law firms that switch sides nimbly." *Commonwealth Ins. Co. v. Stone Container Corp.*, 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001) (quoting *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir. 1983)). "[T]he practice of law is a public trust to be sacredly guarded." *United States v. Genova*, 167 F. Supp. 2d 1021, 1024 (N.D. Ill. 2001); *see, e.g.*, *Schmude v. Sheahan*, 312 F. Supp. 2d 1047, 1084 (N.D. Ill. 2004). "A law firm's and lawyer's most valuable asset is their reputations for honesty and integrity, along with competence." *Cromley v. Bd. of Educ. of Lockport Twp. High Sch. Dist. 205*, 17 F.3d 1059, 1065 (7th Cir. 1994) (citations omitted). Prohibiting lawyers who violate ethical requirements from further participating in the legal proceedings to which the violation pertains is one way to renew the public's faith in the integrity of the legal profession and in the fairness of the judicial proceedings.

The Barnes & Thornburg's attorneys who are members of the bar of this court[10] were engaged in the practice of law when they issued the July and August 2003 opinion letters. Beverly now seeks to bring these attorneys before this court and use their legal analysis, along with their positions as attorneys, to argue against Andrew's contentions of Beverly's willful infringement. Attorneys who are licensed to practice in this district are bound by the ethical obligations of the Rules of Professional Conduct in all aspects of their practice of law, not just when they have filed an appearance in a particular case before the court.

Patent opinion letters are intended by both the attorney and the client to be relied upon and followed by the client in making decisions as to the client's future conduct relative to a patent. The Federal Circuit sitting *en banc* has instructed that

> Fundamental to [the] determination of willful infringement is the duty to act in accordance with law. ... The Federal Circuit [has] ruled that "where, as here, a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing," including "the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity."

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1339, 1343 (Fed. Cir. 2004) (*en banc*) (quoting *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983)). "Usually, this duty of due care requires a potential infringer to obtain competent legal advice before continuing its potentially infringing activities." *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1357 (Fed. Cir. 2001) (citing *Electro Med. Sys. S.A. v. Cooper Life Scis.*, 34 F.3d 1048, 1056 (Fed. Cir. 1994)).

---

[10] All of the involved attorneys except for McWilliams are members of the bar of the United States District Court for the Northern District of Illinois. McWilliams would still be responsible for following this court's Code of Professional Responsibility if he participated in this proceeding.

The primary purpose of a client obtaining a patent opinion letter from independent, objective and competent patent counsel is to "ensure that it acts with due diligence in avoiding activities which infringe the patent rights of others," not the mere creation of a prophylactic defense against a potential claim of willful infringement. *Comark Commc'n, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998). An attorney-client relationship is created by a client's request for a patent opinion letter because the client seeks guidance from competent patent counsel on how to structure its activities in order to comply with the law. *Compare Commonwealth Ins. Co. v. Stone Container Corp.*, 178 F. Supp. 2d 938, 944 (N.D. Ill. 2001) (no attorney-client relationship created when an attorney is engaged solely testify as an expert at trial). Patent opinion letters may remain confidential under the protection of the attorney-client privilege, *cf. Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1339, 1343 (Fed. Cir. 2004) (*en banc*) (holding that a court may not draw an adverse inference when the defendant asserts the attorney-client privilege to withhold an opinion letter in an infringement lawsuit), because such opinion letters are not created exclusively for use in litigation. Here Barnes & Thornburg was asked by Beverly to provide Beverly legal advice and that legal advice took the form of the three written July and August 2003 opinion letters at issue in this motion. In providing these three opinion letters, the Barnes & Thornburg attorneys were acting within the attorney-client relationship.

The mere act of obtaining an opinion letter, however, is not sufficient to avoid a later finding of willful infringement. The relevant question is the "infringer's investigation and good-faith belief of invalidity or non-infringement." *See Transclean Corp. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1377-78 (Fed. Cir. 2002) (citing *Read Corp. v. Portec, Inc.*, 970 F.3d 816, 826

(Fed. Cir. 1992)) (listing the nine *Read* factors that a court should consider in determining whether to increase damages for willful infringement). The infringer can still be held liable for willful infringement despite receiving an opinion letter when: (1) the infringer ignores the warnings of a competent counsel, (2) fails to provide sufficient information to allow the lawyer to provide an independent, objective and competent opinion letter, (3) obtains the opinion letter after infringing activity has occurred or merely as a defense to future litigation with no intention of curbing his infringing activities. *See Applied Medical Res. Corp. v. U.S. Surgical Corp.*, – F.3d –, No. 05-1149, 2006 WL 163187, at pg. 9 (Fed. Cir. Jan. 24, 2006) (affirming a jury's finding of willful infringement when the record demonstrated that the defendant obtained the opinion letter merely as a defense in litigation and did not rely on it as legitimate advice); *nCube Corp. v. Seachange Intern., Inc.*, – F.3d –, Nos. 03-1341, 03-1366, 2006 WL 39053, at *5 (Fed. Cir. Jan. 9, 2006) (affirming a jury's finding of willful infringement when the defendant manipulated the information given to counsel to ensure an opinion letter resulted in an opinion of non-infringement).

"The legal opinion must be 'competent' or it is of little value in showing the good faith belief of the infringer." *Comark Commc'n, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *see SRI Int'l Inc. v. Advanced Tech. Lab, Inc.*, 127 F.3d 1462, 1466 (Fed. Cir. 1997) (affirming the district court's rejection of the defendant's reliance on an opinion letter that was "conclusory and woefully incomplete"). The competency of an attorney to produce an opinion letter is more than just his or her ability analyze the law and the facts. Attorneys must perform their work within the confines of the ethical obligations that regulate their professional conduct.

Barnes & Thornburg's conflict, which arose from the concurrent representation of both

15

Andrew and Beverly, who were adverse to one another, prevents Barnes & Thornburg from being able to provide the type of competent, independent advice and opinion letters that the law requires. Barnes & Thornburg's fiduciary duties to Andrew prohibited it from taking any position adverse to Andrew. Under Local Rule 83.51.7, in the absence of valid consents by both Andrew and Beverly waiving the conflict after full disclosure to each, Barnes & Thornburg's only competent legal opinion in July and August 2003 to Beverly consistent with the Code of Professional Conduct was to refrain from expressing any opinion. Therefore, as a matter of law, this court holds that the July and August 2003 opinion letters were not issued by competent opinion counsel. The only remedy available to enforce adherence to the Rules of Professional Conduct is, to the extent possible, place the parties in the position they would have been in had counsel acted competently in accordance with the Rules of Professional Conduct. Consequently, it appears that to be fair and to uphold the integrity of the profession, no opinion letter by Barnes & Thornburg while laboring under the unwaived conflict of interest, should be used in any manner in this case.

This court appreciates, but disagrees, with Beverly's argument that it is an "innocent" party in this situation. In 2003, Beverly had the affirmative duty to exercise due care to determine whether or not it infringed on Andrew's patents. Included in Beverly's affirmative duty was the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1339, 1343 (Fed. Cir. 2004) (*en banc*) (quoting *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983)). Beverly's affirmative obligation to seek and obtain competent legal advice from counsel included the obligation to

obtain legal advice from a counsel who was free from ethical conflicts. That aspect of Beverly's affirmative duty is just as important as Beverly's obligation to seek and obtain counsel with sufficient ability, experience and expertise in patent matters to render a legally competent opinion. It was Beverly who chose Barnes & Thornburg to provide the July and August 2003 opinion letters and, unfortunately, it is Beverly who must now live with the consequences of that choice. There is a clear showing that Barnes & Thornburg was laboring under a clear and unwaived conflict when the July and August 2003 opinion letters adverse to Andrew were provided to Beverly. Barnes & Thornburg was precluded by the conflict from providing those letters. Beverly's apparent lack of knowledge of the existence of the conflict does not change the fact that the conflict, under which Barnes & Thornburg labored, existed. Beverly may seek recourse from Barnes & Thornburg elsewhere if it desires.

In this case, this court must uphold the requirements of the Code of Professional Responsibility and protect the public's confidence in the integrity of the legal profession. Therefore, this court must preclude any use and any mention of the July and August 2003 Barnes & Thornburg opinion letters at trial.

CONCLUSION

For the reasons set forth above, Andrew's motion of November 8, 2005 to disqualify Barnes & Thornburg from participating in this case and to exclude all opinion letters issued by Barnes & Thornburg to Beverly (Dkt. No. 93), is granted. The July and August 2003 opinion letters or any mention thereof will not be allowed in the trial of this case. The case is set for a report on status on March 7, 2006 at 9:00 a.m. The parties are again encouraged to discuss settlement.

ENTER:

*[signature: James F. Holderman]*

_____
JAMES F. HOLDERMAN
United States District Judge

DATE: February 16, 2006